## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| SUE E. SWAIM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CREIGHTON SAINT JOSEPH | ) | |
| REGIONAL HEALTH CARE SYSTEM, | ) | 8:06CV58 |
| L.L.C., A Limited Liability Company | ) | |
| d/b/a CREIGHTON UNIVERSITY | ) | MEMORANDUM AND ORDER |
| MEDICAL CENTER, and TENET | ) | |
| AMISUB (SAINT JOSEPH HOSPITAL) | ) | |
| INC., A Nebraska Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the magistrate judge by consent of the parties on DEFENDANTS'
MOTION TO STAY PROCEEDINGS PENDING ARBITRATION OR, ALTERNATIVELY, TO DISMISS
(Filing 11). Having carefully considered the parties' arguments and evidentiary submissions
(Filings 11, 12, 13, 17, 18, 19 and 20), I find that the motion to compel arbitration should be
granted and the case should be stayed pending the completion of arbitration.

### FACTUAL BACKGROUND

Creighton Saint Joseph Regional Health Care System, L.L.C., d/b/a Creighton University
Medical Center ("Medical Center") is owned and operated by Tenet Amisub (Saint Joseph
Hospital) Inc. ("Tenet"). Tenet owns and operates hospitals in 13 states. The Medical Center
is engaged in interstate commerce in that it regularly treats out-of-state patients; receives
payments through multi-state insurance carriers and/or Medicare or Medicaid Funds; and
regularly receives goods and services from out-of-state vendors.

On December 11, 2001, plaintiff applied for employment with the defendant and signed

an application (Filing 12, Exhibit 2A) which stated, in part:

> I understand that any and all disputes regarding my employment with Tenet, including any disputes relating to the termination of my employment [are] subject to the Tenet Fair Treatment Process, which includes final and binding arbitration, and I also understand and agree, as a condition [of] employment and continued employment, to submit any such disputes for resolution under that process, and I further agree to abide by and accept [the] decision of the Arbitration panel as the final and binding decision and resolution of any such disputes I may have.

Plaintiff was hired on February 18, 2002 as Director of Post Operative Services.  As part of the

hiring process, plaintiff signed an "Employee Acknowledgment Form" (filing 12, Exhibit 2B)

on  February 4, 2002 which states, among other things:

> [I] acknowledge that I have received and reviewed a copy of the Tenet Fair Treatment Process brochure. I hereby voluntarily agree to use the Company's Fair Treatment Process and to submit to final and binding arbitration any and all claims and disputes that are related in any way to my employment or the termination of my employment with Tenet.  I understand that final and binding arbitration will be the sole and exclusive remedy for any such claim or dispute against Tenet or its parent, subsidiary or affiliated companies or entities, and each of its and/or their employees, officers, directors or agents, and that, by agreeing to use arbitration to resolve my dispute, both the Company and I agree to forego any right we each may have had to a jury trial on issues covered by the Fair Treatment Process. I also agree that such arbitration will be conducted before an experienced arbitrator chosen by me and the Company, and will be conducted under the Federal Arbitration Act and the procedural rules of the American Arbitration Association ("AAA").
>
> I further acknowledge that in exchange for my agreement to arbitrate, the Company also agrees to submit all claims and disputes it may have with me to final and binding arbitration, and that the Company further agrees that if I submit a request for binding arbitration, my maximum out-of-pocket expenses for the arbitrator and the administrative costs of the AAA will be an amount equal to one day's pay (if I am an exempt employee) eight times my hourly rate of pay (if I am a non-exempt employee), or the local civil filing fee, whichever is less and that the Company will pay all of the remaining fees and administrative costs of the arbitrator and the AAA.  I further acknowledge that this mutual agreement to

-2-

arbitrate may not be modified or rescinded except by a written statement signed by both me and the Company.

Upon her employment with defendant, plaintiff received a copy of the "Tenet Open Door Policy and Fair Treatment Process" (Filing 12, Exhibit 2C). The Fair Treatment Process includes a grievance and arbitration agreement for final and binding arbitration under the auspices of the AAA. The Fair Treatment Process ("FTP") applies to all disputes relating to or arising out of a person's employment with Tenet. (Filing 12, Exhibit 2C). The only issues excluded from the FTP are workers' compensation claims, claims involving ERISA benefit plans, claims for unemployment benefits, "non-waivable statutory claims," and claims of employees covered by certain collective bargaining agreements.

The FTP is a five-step procedure for reviewing employee complaints throughout the defendants' chain of command. If an employee is not satisfied with the resolution of his or her complaint in Steps 1 through 4 of the process, and the employee still believes the complaint has merit, the FTP provides:

**Step 5: Final and Binding Arbitration**

If you do not accept the decision reached in Step 4, then you have the right to submit the problem or dispute to final and binding arbitration. The arbitration process is limited to disputes, claims or controversies that a court of law would be authorized or have jurisdiction over to grant relief and that in any way arise out of, relate to or are associated with your employment with the company or termination of your employment. In such cases, an impartial and independent arbitrator - chosen by agreement of both you and the company - will be retained to make a final decision on your dispute or claim, based on application of Company policies and procedures and applicable law. The arbitrator's decision is final and binding on you and the Company. The arbitration process is discussed in more detail in the "Arbitration Process" section below[.]

-3-

* * * *

**The Arbitration Process**

    If you want to appeal the decision reached in Step 4 of the process, you must obtain and complete a "request for Arbitration Form" from the Human Resources Department in order to initiate the arbitration process. That form also will serve to confirm your and the company's prior mutual agreement to submit the dispute to final and binding arbitration. The arbitration will be heard by an independent and impartial arbitrator chosen by you and the company. By deciding to arbitrate the dispute, you also agree that the remedy, if any, ordered by the arbitrator will be the only remedy as to all matters that are or could have been raised by you in the arbitration.

    The arbitrator's responsibility is to determine whether company policies and procedures and applicable law have been complied with in the matter submitted for arbitration. The arbitrator shall render a written decision on the matter within 30 days after the arbitration hearing is concluded and post-hearing briefs, if any, are submitted.

    The arbitration will be administered by the American Arbitration Association ("AAA"). The company and you will share the cost of the AAA's filing fee and the arbitrator's fees and costs, but your share of such costs shall not exceed an amount equal to one day's pay for exempt employees or eight times your hourly rate for non-exempt employees or your local court civil filing fee, whichever is less. You and the company will be responsible for the fees and costs of your own respective legal counsel, if any, and any other expenses and costs, such as costs associated with witnesses or obtaining copies of hearing transcripts.

Filing 12, Exhibit 2C.

    Plaintiff's employment with the defendant was terminated on October 6, 2003. Plaintiff did not pursue any remedy under the defendant's Fair Treatment Process but, instead, filed a complaint with the Nebraska Equal Opportunity Commission and brought this lawsuit alleging claims for age and disability discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e, et seq., as amended (Title VII), the Age Discrimination in Employment Act, 29 U.S.C.A. §§ 621-634 (ADEA), and the Americans With Disabilities Act of 1990 (ADA).

-4-

## ISSUES PRESENTED

Defendants argue that the employment relationship between the plaintiff and the Medical Center is a "transaction involving commerce" and is within the scope of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2. They contend the arbitration agreement should be enforced, based on the plaintiff's signing the documents discussed, *supra*, and that this action be either dismissed or stayed pursuant to 9 U.S.C. § 3.

The plaintiff contends the FAA does not apply to disputes between an employer and employee; that the employment relationship between the plaintiff and the Medical Center does not involve commerce; the arbitration agreement is unconscionable; and her claim for punitive damages is a "statutory claim" excluded from the scope of the FTP (assuming without conceding there is a valid agreement).

## LEGAL ANALYSIS

"[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)." In this regard, "[s]ection 2 of the [Federal Arbitration Act ("FAA")] provides that written arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of *any* contract.'" *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 686 (1996) (quoting 9 U.S.C. § 2; emphasis by Supreme Court); *see also Barker v. Golf U.S.A., Inc.*, 154 F.3d 788, 790 (8th Cir. 1998), *cert. denied*, 525 U.S. 1068 (1999). Thus, "[b]efore a party may be compelled to arbitrate under the [FAA], the district court must engage in a limited inquiry to determine whether a valid agreement to arbitrate exists

-5-

between the parties and whether the specific dispute falls within the scope of that agreement." *Houlihan v. Offerman & Co., Inc.*, 31 F.3d 692, 695-96 (8th Cir. 1994) (citing *Daisy Mfg. Co. v. NCR Corp.*, 29 F.3d 389, 392 (8th Cir. 1994)).

"The court is to make this determination by applying the 'federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.'" *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626 (1985).  When deciding whether the parties agreed to arbitrate the dispute in question, "courts generally ... should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995).  Generally applicable contract defenses, such as fraud[1], duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2; however, courts may not invalidate arbitration agreements under state laws applicable *only* to arbitration provisions.  *Casarotto*, 517 U.S. at 687 (emphasis in original). The court must stay the proceeding and compel arbitration if the court determines that the parties' dispute falls within the scope of a valid arbitration agreement.  *Houlihan*, 31 F.3d at 696; 9 U.S.C. §§ 3 & 4.

### A.  Did the Parties Agree to Arbitrate?

The FAA, 9 U.S.C. § 2 provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter

---

[1]In *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 403-04 (1967), the Supreme Court held that a claim of fraud in the inducement of a contract as a whole must go to an arbitrator, but issues which go to the making of the agreement to arbitrate should be decided by a court.  In the case at bar, the plaintiff does not argue that she was fraudulently induced to agree to the arbitration clause.

arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

"Under the FAA, ordinary contract principles govern whether parties have agreed to arbitrate." *Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832, 834 (8th Cir. 1997) (citing *Daisy Mfg. Co., Inc. v. NCR Corp.*, 29 F.3d 389, 392 (8th Cir. 1994)). Under Nebraska law, "[t]o create a contract, there must be both an offer and an acceptance; there must also be a meeting of the minds or a binding mutual understanding between the parties to the contract." *Nebraska Nutrients, Inc. v. Shepherd*, 261 Neb. 723, 751, 626 N.W.2d 472, 498 (2001); *accord Gerhold Concrete Co., Inc. v. St. Paul Fire & Marine Ins. Co.*, 269 Neb. 692, 700, 695 N.W.2d 665,672 (2005).

Plaintiff states in her brief (Filing 18) that she signed "many forms" provided by the defendants and has no recollection of signing an arbitration agreement. She further notes that she signed the documents, which ware labeled "Application for Employment" and "Employee Acknowledgment Form" before the date her employment started and contends no arbitration agreement could exist because there was no employment relationship when the documents were signed. Plaintiff states in her affidavit (Filing 19) that she did not sign the documents knowing them to be arbitration contracts.

Here, the plaintiff does not deny signing an application for employment (Filing 12, Exhibit 2A) requiring her, as a condition of employment and continued employment, to utilize the Tenet Fair Treatment Process, which includes final and binding arbitration, to resolve any

and all disputes regarding her employment with Tenet.  Plaintiff also signed the "Employee Acknowledgment Form" (filing 12, Exhibit 2B) in which she "voluntarily agree[d] to use the Company's Fair Treatment Process and to submit to final and binding arbitration any and all claims and disputes that are related in any way to [her] employment or the termination of [her] employment with Tenet."

"As a general rule, every person of mature age able to read and write, who has an opportunity to read an instrument, and executes the same is presumed to know the contents of the instrument signed and is estopped from denying the contents thereof." *Kramer v. Eagle Eye Home Inspections, Inc.*, --- N.W.2d ----, 14 Neb. App. 691, 2006 WL 1071972 at *11 (Neb. Ct. App. April 25, 2006).  Here, the plaintiff accepted and continued with her employment with Tenet on the condition that she agreed to utilize the FTP, including its arbitration requirement, to resolve any and all disputes regarding her employment with Tenet.  I find that plaintiff is estopped from denying the contents of the arbitration agreement and that the parties did agree to arbitrate.

### B.    Does the Federal Arbitration Act Apply?

The plaintiff contends the FAA does not apply to disputes between an employer and employee and the employment relationship between the plaintiff and the Medical Center does not involve "commerce."  It appears that the Eighth Circuit's decision in *Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832,  834 (8th Cir. 1997), essentially governs this issue.

In *Patterson*, the plaintiff received a copy of Tenet's employee handbook and signed an arbitration clause set forth on the last page of the handbook. The court held that the arbitration

clause was separate from the other provisions of the handbook and constituted an enforceable contract. 113 F.3d at 835. The court next considered whether the FAA governed the agreement to arbitrate, and rejected the plaintiff's argument that, by enacting Section 1 of the FAA[2], Congress intended to exempt all employment contracts from the FAA. The court held that Section 1 should be interpreted narrowly, the arbitration agreement between Patterson and Tenet was governed by the FAA, and the arbitration agreement was enforceable. 113 F.3d at 836-37. Subsequently, in *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001), the Supreme Court held that "Section 1 exempts from the FAA only contracts of employment of transportation workers." *See also Farber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004) (the FAA extends to most arbitration agreements covering employment disputes).

Here, plaintiff signed an Employee Acknowledgment Form agreeing to be bound by the Federal Arbitration Act, and the defendants have shown that the Medical Center is engaged in interstate commerce. Accordingly, I find that the arbitration agreement in this case is governed by the FAA and is not governed by Nebraska's Uniform Arbitration Act, Neb. Rev. Stat. §§ 25-2601 to 25-2622. Compare *Kramer v. Eagle Eye Home Inspections, Inc.*, 2006 WL 1071972 at *10-11 (Nebraska's Uniform Arbitration Act does not mention "commerce" at all and is not preempted by the FAA). Since the arbitration agreement at bar is governed by the FAA, it is immaterial that the documents signed by the plaintiff documents do not bear the notice "THIS CONTRACT CONTAINS AN ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES"

---

[2]Section 1 exempts from FAA enforcement "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1.

that is required by Neb. Rev. Stat. § 25-2602.02.  Compare *Kramer*, 2006 WL 1071972 at *11

(under the Nebraska Uniform Arbitration Act, when a contract which attempts to establish

binding arbitration as the sole remedy fails to strictly comply with § 25-2602.02, the arbitration

clause is voidable and unenforceable).

> Turning to the plaintiff's argument that the agreement is unconscionable,
>
> An unconscionable agreement is defined as "[a]n agreement that no promisor with any sense, and not under a delusion, would make, and that no honest and fair promisee would accept."    Black's Law Dictionary 68 (7th ed.1999).   Unconscionability is determined in light of all the surrounding circumstances, including (1) the manner in which the parties entered into the contract, (2) whether the parties had a reasonable opportunity to understand the terms of the contract, and (3) whether the important terms were hidden in a maze of fine print.

*Parizek v. Roncalli Catholic High Sch. of Omaha*, 11 Neb. App. 482, 486, 655 N.W.2d 404, 408

(Neb. Ct. App. 2002) (citing *Adams v. American Cyanamid Co.*, 1 Neb. App. 337, 498 N.W.2d

577 (1992)).  The plaintiff has offered no evidence tending to show that the arbitration agreement

is "unconscionable" and the court finds her argument to be without merit.

### C.    Are Plaintiff's Claims Excluded from the Scope of the FTP?

Plaintiff contends her claim for punitive damages pursuant to 42 U.S.C. § 1981a(b) is a

"statutory claim" excluded from the scope of the FTP, which provides:

> [A]ny non-waivable statutory claims, which may include wage claims within the jurisdiction of a local or state labor commissioner or administrative agency charges before the Equal Employment Opportunity Commission or similar local or state agencies, are not subject to exclusive review under the FTP.  This means that you may file such non-waivable statutory claims with the appropriate agency that has jurisdiction over them if you wish, regardless of whether you decide to use the FTP to resolve them.   However, if such an agency completes its processing of your action against the company, you must use the FTP (although Steps 1 through 4 may be skipped).

-10-

"[S]tatutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA," and the Supreme Court has "recognized that '[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute;  it only submits to their resolution in an arbitral, rather than a judicial, forum.'"  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991).  "[E]ven claims arising under a statute designed to further important social policies may be arbitrated because '"so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum,"' the statute serves its functions."  *Green Tree Financial Corp. v. Randolph*, 531 U.S. 79, 90 (2000).

"[A] challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator."  *Buckeye Check Cashing, Inc. v. Cardegna*, 126 S. Ct. 1204, 1210 (2006).  The arbitrator will determine the extent of its procedural and remedial authority as limited by contract.  The arbitrator may determine if a party has waived statutory rights, and may choose to enforce substantive statutory rights even in the face of contractual limitations.  *Faber v. Menard, Inc.*, 367 F.3d at 1052.

The arbitration agreement in this case reflects that the employee must use the FTP even if non-waivable statutory claims are filed with the appropriate agency.  I find that plaintiff's argument is without merit, and all of her claims are subject to review under the FTP.

## CONCLUSION

When reviewing an arbitration clause, the court asks only

(1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement.  "We have described this narrow scope of review as addressing 'only such issues as are essential to defining the

-11-

> nature of the forum in which a dispute will be decided.' .... We will not extend that review 'to the consideration of public policy advantages or disadvantages resulting from the enforcement of the agreement.' .... Questions about remedy are also outside our scope of review because they do not affect the validity of the agreement to arbitrate."

*Faber v. Menard, Inc.*, 367 F.3d at 1052 (citations omitted). In this instance, the court finds there is a valid arbitration agreement and the parties' dispute falls within the terms of the arbitration agreement. Pursuant to the FAA, 9 U.S.C. § 3, on the application of either party, the court must stay the suit until arbitration has occurred.

### IT THEREFORE IS ORDERED:

1.     DEFENDANTS' MOTION TO STAY PROCEEDINGS PENDING ARBITRATION (Filing 11) is granted. The alternative motion for dismissal is denied. All claims are stayed pending binding arbitration in accordance with the Federal Arbitration Act and under the procedures of the American Arbitration Association.

2.     The parties shall electronically file written status reports concerning the progress of the arbitration proceedings. The first status report shall be filed by **October 1, 2006.** Subsequent status reports are due **every 90 days thereafter** until all arbitration proceedings are completed.

**DATED June 28, 2006.**

**BY THE COURT:**

**s/ F.A. Gossett**
**United States Magistrate Judge**

-12-